## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOYCE TWINE,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  15-5168** |
| **ALLSTATE INSURANCE COMPANY,**<br>    **Defendant** | **SECTION: "E" (4)** |

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Allstate Insurance Company.[1] The motion is opposed.[2] For the following reasons, the motion is **DENIED**.

### BACKGROUND

Defendant, Allstate Insurance Company ("Allstate"), issued a homeowners' insurance policy to Plaintiff, Joyce Twine, for her property at 4412 Duplessis Street in New Orleans, Louisiana.[3] No one had been living at the property since 2005 when it was severely damaged by Hurricane Katrina.[4] Although the property was repaired from flood and wind damage after Hurricane Katrina, the interior of the home was not outfitted with handicap-accessible features, which Twine requires.[5] As a result, Twine was forced to reside with her mother, and then with her daughter, with whom she still lives.[6]

Twine alleges the Allstate homeowners' policy was in effect on November 6, 2014, when she discovered a water leak at her property from an icemaker supply line, which caused extensive damages.[7] Upon the inspection of Allstate's adjuster, Richard Laraway,

---

[1] R. Doc. 24.
[2] R. Doc. 25.
[3] R. Doc. 24-2 at 1, R. Doc. 25-1 at 1; *see also* R. Doc. 24-9 and R. Doc. 24-10 (Twine's homeowners' policy with Allstate).
[4] R. Doc. 24-2 at 1, R. Doc. 25-1 at 1, R. Doc. 24-4 at 11.
[5] R. Doc. 54-4 at 12–13.
[6] R. Doc. 24-2 at 1, R. Doc. 25-1 at 1, R. Doc. 24-4 at 15.
[7] R. Doc. 24-2 at 1, R. Doc. 25-1 at 1.

Allstate denied Twine's claim because her policy contained an exclusion for continuous and repeated leakage for a period of weeks, months, or years.[8]

Twine alleges she made settlement demands on March 30, 2014 and July 30, 2015, both of which Allstate denied.[9] Twine then filed suit for damages in the Civil District Court for the Parish of Orleans, also alleging Allstate's denial of her claim was arbitrary, capricious, and without good faith.[10] The suit was removed to this Court on October 14, 2015.[11]

On May 4, 2016, Allstate filed a motion for summary judgment seeking dismissal of Twine's claims.[12] According to Allstate, it does not owe coverage and summary judgment should be granted in its favor on two bases: (1) Twine breached the requirement in the Louisiana Standard Fire Policy Endorsement that she inform Allstate if the property is vacant or unoccupied for more than sixty days and any waiver of this requirement had to be in writing, and (2) Exclusion 18, which precludes coverage for damage caused by continuous seepage or leakage over a period of weeks, months, or years, excludes coverage for Twine's property damage.[13] Additionally, Allstate argues Twine cannot meet her burden of proving Allstate acted arbitrarily or capriciously in its refusal to cover Twine's property damage because Allstate had a reasonable basis on which to defend the claim.[14]

---

[8] R. Doc. 25-4 at 13, R. Doc. 24-10 at 2.
[9] R. Doc. 1 at 11–12.
[10] R. Doc. 1 at 11.
[11] R. Doc. 1.
[12] R. Doc. 24.
[13] *See* R. Doc. 24-3.
[14] R. Doc. 24-3 at 11–13.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "An issue is material if its resolution could affect the outcome of the action."[16] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[17] All reasonable inferences are drawn in favor of the nonmoving party.[18] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[19]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[20] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[21]

---

[15] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[16] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[17] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[18] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[20] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[21] *Celotex*, 477 U.S. at 322–24.

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[22] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[23] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[24] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[25] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule

---

[22] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[23] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[24] *Celotex*, 477 U.S. at 332–33.
[25] *Id.*

4

56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[26] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[27]

## LAW AND ANALYSIS

Twine bears the burden of proving at trial that she is entitled to coverage and that Allstate's denial of coverage was arbitrary and capricious. If coverage is established, the insurer bears the burden of proving at trial that a policy exclusion applies to avoid liability.[28] As the moving party on summary judgment, it is Allstate's burden to establish the absence of genuine issues of material fact and that it is entitled to judgment as a matter of law.

I. Waiver of Vacancy/Occupancy Requirement

Allstate first argues "[t]he undisputed facts illustrate plaintiff's property remained vacant and unoccupied after Hurricane Katrina through the loss date in November 2014," and coverage is therefore excluded under Louisiana Revised Statutes section 22:1311(F)(2)—Louisiana's standard fire policy provisions[29]—which is incorporated into the policy in an endorsement labeled "Louisiana Standard Fire Policy Provisions" (hereinafter, "the Fire Endorsement").[30] The Fire Endorsement states the insurer is not

---

[26] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[27] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.
[28] *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 2009); La. Rev. Stat. § 22:1893 ("If damage to immovable property is covered, in whole or in part, under the terms of the policy of insurance, the burden is on the insurer to establish an exclusion under the terms of the policy.").
[29] R. Doc. 24-10 at 25.
[30] R. Doc. 24-3 at 6–7. Section 22:1311(F)(2) is contained in the Louisiana Insurance Code under the subheading "Fire and Extended Coverage (Standard Fire Policy)."

liable for loss occurring "[w]hile a described building, whether intended for occupancy by owner or tenant, is vacant, or unoccupied beyond a period of sixty consecutive days."[31] The waiver provision, in relevant part, reads: "No permission affecting this insurance shall exist, or waiver of any provision be valid unless granted herein or expressed in writing added hereto."[32]

Allstate argues it never received any communication from Twine that her property would remain vacant and unoccupied after it was repaired.[33] Allstate further argues section 22:1311 requires the waiver of any provision to be in writing, and it is undisputed that Twine never requested or received a written waiver of the occupancy requirement. As a result, Allstate argues that coverage is excluded because the property was unoccupied for more than sixty days.[34]

In response, Twine argues there exist disputed issues of material fact with respect to whether Allstate had notice that the home was vacant and waived the occupancy requirement.[35] Twine points to her claim file to show that in 2007 and 2009, she informed Allstate of a change of address, which Twine argues put Allstate on notice she was not residing in her home.[36] Twine does not dispute that after September 2009, she had no further communication with Allstate regarding the occupancy of her property until her date of loss on November 6, 2014.[37]

The Court finds that it need not determine whether there are disputed issues of material fact with respect to notice of non-occupancy or waiver. Even if there are no

---

[31] LA. REV. STAT. § 22:1311(F)(2).
[32] *Id.*
[33] R. Doc. 24-3 at 6.
[34] R. Doc. 24-3 at 6–9.
[35] R. Doc. 25 at 5.
[36] R. Doc. 25 at 5, R. Doc. 24-6 at 64, R. Doc. 24-6 at 95, R. Doc. 24-7 at 18.
[37] R. Doc. 24-2 at 2, R. Doc. 25-1 at 3, R. Doc. 24-5 at 46–47.

disputed issues of material fact with respect to these issues, Allstate is not entitled to judgment as a matter of law that it owed no coverage to Twine.

The Court finds the Fire Endorsement does not apply to the water leakage loss in this case and, instead, applies only to claims for loss due to fire. Nowhere in the policy does it state the provisions of the Fire Endorsement are incorporated into the remainder of the policy. In fact, the statute itself, on which the Fire Endorsement is based, contemplates there will be differences in coverage between the peril of fire and other perils.[38]

The Fifth Circuit has held the standard fire policy provisions of section 22:1311 should not be read into coverage for non-fire perils. In *In re Consolidated Companies*, the trial court refused to read the standard fire policy provisions into the insurance policy coverage for theft and vandalism, which triggered the loss in that case.[39] On appeal, the Fifth Circuit affirmed the district court, and found that "the legislature's handling of additional coverages in section 22:691(E) further demonstrates that 'other coverages' do not receive the benefits of the standard fire insurance provisions." As a result, the Fifth Circuit "believe[d] the legislature expressly authorized insurers to depart from the standard policy with respect to other coverages because the other coverages were not the legislature's concern in adopting the standard fire insurance policy."[40] The Fifth Circuit further stated "[i]n analyzing the scope of the fire statutes, we noted that the protective

---

[38] *See* La. Rev. Stat. § 22:1311(E)(1) ("Such forms [of insurance against other perils] may contain provisions and stipulations inconsistent with the standard policy if applicable only to such other perils."); *Id.* at § 1311(E)(2) ("Any policy or contract . . . [that] includes . . . coverage against the peril of fire and substantial coverage against other perils need not comply with the provisions of Subsections A and B . . . .").

[39] 185 B.R. 223, 226 (E.D. La. Aug. 2, 1995).

[40] *In re Consol. Cos.*, 106 F.3d 396 (5th Cir. 1996). Louisiana Revised Statutes section 22:691 was renumbered and is now section 22:1131.

terms of the fire insurance provisions do not extend to other types of policies or other perils causing damage without an accompanying fire loss."[41]

In this case, there is no claim for fire damage. The provisions referenced in the Fire Endorsement do not apply to the water leakage loss.[42] Because the occupancy and waiver clauses Allstate relies upon to establish that it is entitled to judgment as a matter of law do not apply to the loss in this case, the motion for judgment as a matter of law is denied.[43]

II.   APPLICABILITY OF EXCLUSION 18—THE CONTINUOUS LEAKAGE EXCLUSION

Allstate also argues summary judgment should be granted in its favor because no genuine disputes of material fact exist with respect to whether Exclusion 18 applies. Exclusion 18 precludes coverage for damage caused by "continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel."[44] In response, Twine argues there exist genuine disputes of material fact with respect to when the leak began.[45] Specifically, Twine contends the time the leak began is essential to the determination of coverage because the Allstate policy covers leaks that are sudden and

---

[41] *Id.* (internal citations omitted).

[42] The Court also notes that Richard Laraway, Allstate's adjuster who inspected Twine's property, testified he denied coverage based on only Exclusion 18, which precludes coverage for continuous water leaks. R. Doc. 25-4 at 13. Laraway further testified he never sent a letter to Twine denying the claim based on vacancy, and never spoke with his supervisors about the issue of Twine's property being vacant. *Id.*

[43] Even if the statute containing standard fire provisions was applicable to the facts of this case, the Court would still deny summary judgment, as disputed issues of material fact exist with respect to whether Twine's alleged breach of the occupancy provision was known by Allstate. Under Louisiana Revised Statutes section 22:1314 "a breach shall not afford a defense to a suit on the policy . . . if the facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents." LA. REV. STAT. § 22:1314(B).

[44] R. Doc. 24-10 at 2.

[45] R. Doc. 25 at 7.

accidental, but does not cover those leaks that are continuous over a period of weeks or months.[46]

As the insurer, Allstate bears the burden of proving at trial that Exclusion 18 applies.[47] As the moving party on summary judgment, Allstate must submit evidence that would "entitle it to a directed verdict if the evidence went uncontroverted at trial."[48] If Allstate does not submit sufficient evidence to meet this burden, the motion must be denied. If Allstate presents sufficient summary judgment evidence, the burden shifts to Twine, as the nonmoving party, to submit evidence sufficient to establish that a genuine dispute of material fact exists.

In support of its position, Allstate submits the affidavit of its engineering expert, Charles E. Prewitt, P.E., in which he opines the water leakage at Twine's property began between August 20, 2014 and September 18, 2014—months before Twine discovered the leak in November of 2014.[49] Prewitt also opines "approximately a hundred gallons of water had leaked from the water line serving the refrigerator into the property."[50] Allstate contends Prewitt relied on Twine's Sewerage and Water Board bills, which show there was no water consumption at the property in June, July and August of 2014, but water consumption began in September and continued through November 2014.[51] Allstate argues these bills show the water leakage began in August of 2014 and continued until November 2014, making Exclusion 18 applicable.[52] The Court finds Allstate submitted

---

[46] R. Doc. 25 at 8, R. Doc. 24-10 at 2.

[47] *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 2009); LA. REV. STAT. § 22:1893 ("If damage to immovable property is covered, in whole or in part, under the terms of the policy of insurance, the burden is on the insurer to establish an exclusion under the terms of the policy.").

[48] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[49] R. Doc. 24-8 at 2.

[50] R. Doc. 24-8 at 2.

[51] R. Doc. 24-3 at 10.

[52] R. Doc. 24-3 at 10.

sufficient evidence, such that the burden shifted to Twine for her to direct the Court to evidence setting forth facts sufficient to establish that a genuine dispute of material fact exists with respect to whether Exclusion 18 applies.

Twine presents summary judgment evidence that there has "never been a determination by Allstate during the claim, or by their expert, Charles Prewitt, of when the leak began and how long it continued before Twine discovered [the leak]."[53] In support, Twine submits the deposition of Allstate's adjuster, Richard Laraway, in which he testified he denied coverage based on Exclusion 18, but also testified he did not know on which date the leak began.[54] Laraway testified he did not even know "a ballpark" date when the leak began.[55] Finally, Twine submits her deposition, in which she states she visited her property every few weeks and did not see a leak until her visit on November 6, 2014.[56]

The Court finds Twine produced sufficient summary judgment evidence to establish disputed issues of material fact exist with respect to when the leak began and how long it lasted. Accordingly, Allstate's motion for summary judgment with respect to the applicability of Exclusion 18 is denied.

III.   ARBITRARY AND CAPRICIOUS REFUSAL TO PAY

Finally, Allstate seeks summary judgment on Twine's claim that its refusal to pay for the damage to her property is arbitrary and capricious. At trial, Twine will bear the burden of proving that Allstate acted arbitrarily and capriciously by refusing to cover her claim.[57] Allstate, as movant on summary judgment, must submit affirmative evidence to

---

[53] R. Doc. 25 at 7.
[54] R. Doc. 25-4 at 3.
[55] R. Doc. 25-4 at 3.
[56] R. Doc. 24-4 at 29.
[57] *See Reed v. State Farm Mut. Ins. Co.*, 857 So. 2d 1012, 1020–21 (La. 2003).

negate an essential element of Twine's claim or demonstrate there is no evidence in the record to establish an essential element of Twine's claim.

Louisiana Revised Statutes section 22:1892[58] mandates insurers "shall pay the amount of any claim due to any insured within 30 days after receipt of satisfactory proofs of loss from the insured or any party in interest.[59] "Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand . . . when such failure is arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater."[60] Section 22:1973 of the Louisiana Revised Statutes states "[f]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" may subject the insurer to penalties.[61] The conduct prohibited in these two statutes is "virtually identical" and the "primary difference is the time periods allowed for payment."[62]

At trial, Twine will bear the burden of proving that Allstate acted arbitrarily and capriciously by refusing to cover her claim.[63] To prove Allstate breached its duty to timely pay her claim, at trial Twine must show "(1) the insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3)

---

[58] Previously Louisiana Revised Statutes section 22:658.
[59] LA. REV. STAT. § 22:1892(A)(1).
[60] *Id.* at § 1892(B)(1).
[61] *Id.* § 22:1973.
[62] *Reed*, 857 So. 2d at 1020.
[63] *See id.* at 1020−21.

the insurer's failure to pay is arbitrary, capricious, or without probable cause."[64] The issue in this case is whether Allstate's failure to pay is arbitrary and capricious.

With respect to the first issue—whether Allstate was arbitrary and capricious in its denial based on the vacancy provision in the Fire Endorsement—Allstate contends its reasonable defense is its reliance upon the statutory mandates of the Louisiana Standard Fire Policy language and the Fire Endorsement, which requires the insured to inform the insurer if the property becomes vacant or unoccupied.[65] There are two problems with Allstate's contention. First, Allstate's adjuster admitted in his deposition that he did not deny Twine's claim based on the occupancy requirement.[66] Second, as discussed above, the Fire Endorsement does not apply to the loss in this case. Therefore, even if Allstate could establish that there are no genuine disputes of material fact, it is not entitled to judgment as a matter of law, because its reliance upon section 22:1311 to deny coverage for this non-fire peril is unreasonable. Accordingly, Allstate's motion for summary judgment with respect to whether it acted arbitrarily and capriciously in its denial based on the vacancy provision in the Fire Endorsement is denied.

With respect to the second issue—whether Allstate was arbitrary and capricious in its denial based on Exclusion 18—Allstate must submit affirmative evidence to establish no disputed issues of material fact exist. In support of its position that it did not act arbitrarily or capriciously because it has a reasonable basis on which to defend the claim, Allstate submits the affidavit of Charles Prewitt, in which he states the water leakage began between August 20, 2014 and September 18, 2014.[67] Allstate argues this evidence

---

[64] *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739 (5th Cir. 2010) (quoting *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1112–13 (La. 2008)).
[65] R. Doc. 24-3 at 12.
[66] R. Doc. 25-4 at 13.
[67] R. Doc. 24-8.

shows it had reasonable doubts about the extent of Twine's loss.[68] Specifically, Allstate contends "[t]here was clearly a legitimate dispute over . . . [whether the] excluded damages occur[ed] over weeks."[69]

Twine responded by showing there are material facts in dispute with respect to whether Allstate's denial of coverage is arbitrary and capricious. Twine points out that Allstate has made no determination of when the leak began, so it is impossible to know whether the leak was continuous over a period of weeks, as required by Exclusion 18.[70] In support of her position, Twine submits the deposition of Richard Laraway, in which he states he did not know on which date the leak began.[71]

The Court finds disputed issues of material fact exist with respect to whether Allstate acted arbitrarily and capriciously by denying Twine's claim based on Exclusion 18. A determination of whether an insurer's failure to pay a claim was arbitrary and capricious is a finding of fact.[72] Summary judgment is inappropriate when a claim against an insurer for bad-faith penalties depends on factual determinations with respect to the reasonableness of the insurer's actions.[73] Accordingly, Allstate's motion for summary judgment with respect to Twine's claim that Allstate engaged in arbitrary and capricious behavior with respect to its denial of coverage based on Exclusion 18 is denied.

---

[68] R. Doc. 24-3 at 12.
[69] R. Doc. 24-3 at 12–13.
[70] R. Doc. 25 at 8–9.
[71] R. Doc. 25-4 at 13.
[72] *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009).
[73] *Cedar Ridge, LLC v. Landmark Am. Ins. Co.*, No. 13-672, 2014 WL 906211, at *2 (E.D. La. Mar. 7, 2014).

**CONCLUSION**

**IT IS ORDERED** that the motion for summary judgment[74] filed by Allstate Insurance Company is **DENIED**.

New Orleans, Louisiana, this 28th day of December, 2016.

*Susie Morgan*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[74] R. Doc. 24.